UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RICKY JOHN NEUBECKER, JR.,

                Plaintiff,

v.                                               Case No. 20-cv-1222-pp

KENOSHA COUNTY JAIL,
KENOSHA COUNTY JAIL DOCTOR,
and KENOSHA COUNTY JAIL MEDICAL STAFF,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

      Ricky John Neubecker, Jr., an inmate at Stanley Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 21, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $0.33 or file a letter indicating why he could not pay the initial fee. Dkt. No. 9. The next day, the court received a letter from the plaintiff stating that he could not pay the $0.33 initial partial filing fee because one hundred percent of any income he receives is taken and because he cannot obtain a legal loan to pay the fee. Dkt. No. 10. The plaintiff's six-month trust account statement supports this claim. Dkt. No. 4. The court will waive the initial partial filing fee and grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The court will require him to pay the full filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d

2

714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff is suing the Kenosha County Jail, the Kenosha County Jail Doctor and Kenosha County Jail Medical Staff based on events that occurred when he was incarcerated at the Kenosha County Jail.[1] Dkt. No. 1 at 1.

The plaintiff alleges that in January 2020, he asked for a test to see if he had herpes. Dkt. No. at 1 at 2. He says blood cultures showed that he tested positive for herpes simplex A (oral) and B (genital). Id. The plaintiff says that multiple people, including Nurse Practitioner Julie, a male nurse, another nurse and a corrections officer named Dahl, were present when the doctor reported the results. Id. He states that the doctor who reported the test results asked him if he'd had previous outbreaks and the plaintiff responded that he'd had two herpes simplex B outbreaks. Id. at 2-3. The plaintiff allegedly explained that for the first outbreak he went to Kenosha Memorial Hospital and was prescribed Valtrex, but he couldn't get that medication because his insurance did not cover it. Id. at 3. The plaintiff states that he asked the Kenosha County Jail doctor to prescribe him Valtrex, but the doctor said he needed to have an outbreak first. Id.

The plaintiff alleges that for months he feared he would have an outbreak and be in pain. Id. He says that he had an outbreak at the end of May and

---

[1] The plaintiff was incarcerated at Dodge Correctional Institution when he filed this case. Dkt. No. 1. Since then, although he has not notified the court of any change of address, the Wisconsin Department of Corrections inmate locater website shows that the plaintiff was transferred to Stanley Correctional Institution. https://appsdoc.wi.gov/lop/detail.do (last visited December 6, 2020). The docket has been updated with the plaintiff's new address.

when it did not go away on its own, he submitted a request to the health services unit to be seen. Id. A couple of days later, a correctional officer named Craig allegedly escorted the plaintiff to the health services unit and a nurse named Amber Agular examined him. Id. The plaintiff allegedly told the nurse that his outbreak hurt and that he had had it for a few days. Id. The plaintiff says that the nurse noted there were open blister wounds on the side of his penis with a crusty, scab-like outer layer. Id. He allegedly requested to be prescribed Valtrex and the nurse said she would talk with the doctor. Id. According to the plaintiff, instead of Valtrex (an antiviral) he was prescribed Hydrocortisone cream (for rashes). Id. He says that he refused the medication because Hydrocortisone cream does not treat viral infections. Id. The plaintiff states that he filed a grievance but did not receive a response before being remanded to Department of Corrections custody. Id. He says that he is now taking Valtrex. Id.

For relief, the plaintiff seeks compensatory damages for his pain and suffering. Id. He also wants the court to order the defendants to give proper medical care to all inmates. Id.

    C.    <u>Analysis</u>

The court first notes that the plaintiff cannot sue the Kenosha County Jail under 42 U.S.C. §1983. Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The Kenosha County Jail is not a person—it is not an individual subject to suit under §1983. It is true that under some circumstances, a municipality—which is not a

person—may be sued under §1983. See Monell v. Dep't of Soc. Serv's of City of New York, 436 U.S. 658 (1978). But Federal Rule of Civil Procedure 17(b) says that a defendant in a federal lawsuit must have the legal capacity to be sued. State law determines whether an entity has that capacity. Webb v. Franklin Cty. Jail, No. 16-cv-1284, 2017 WL 914736 at *2 (S.D. Ill. Mar. 8, 2017). In Wisconsin, the jail is an arm of the sheriff's department. Under Wisconsin law, the sheriff's department is an arm of the county. See Abraham v. Piechowski, 13 F. Supp. 2d 870, 877-79 (E.D. Wis. 1998). This means that neither the jail nor the sheriff's department are "legal entit[ies] separable from the county government which [they] serve[] . . . ." Whiting v. Marathon Cty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004)). The Kenosha County Jail does not have the capacity to be sued, and the court will dismiss it as a defendant.

Because the plaintiff was in custody at a county jail, the court must consider whether he was a pretrial detainee or a convicted prisoner during the relevant period. If the plaintiff was a pretrial detainee his claim would arise under the Fourteenth Amendment and if he was a convicted prisoner his claim would arise under the Eighth Amendment. See Miranda v. Cty. of Lake, 900 F.3d 335, 350-52 (7th Cir. 2018) (explaining that an objective reasonableness standard applies to claims brought by pretrial detainees while a deliberate indifference standard applies to claims brought by convicted prisoners). Wisconsin online court records show that on February 12, 2020, the plaintiff pled guilty to armed robbery in State of Wis. v. Ricky J. Neubecker, Jr., Case No. 2019CF1295 (Kenosha County), and that he subsequently was sentenced

6

to five years in state prison. See https://www.wcca.wicourts.gov. It appears that the plaintiff was a pretrial detainee before February 12, 2020, and was a convicted prisoner after February 12, 2020.

A §1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause. James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020) (citing Miranda, 900 F.3d at 346-47). Claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. Id. (citing Miranda, 900 F.3d at 352). The plaintiff bears the burden to demonstrate objective unreasonableness, and he must make a two-part showing. Id. First, he must show that the defendants acted purposefully, knowingly or recklessly when considering the consequences of his response to the medical condition at issue in the case. Id. (citing McCann v. Ogle Cty., Ill., 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. Id.

The plaintiff alleges that in January 2020, he asked for, and received, a herpes test. He tested positive for herpes and asked for Valtrex medication, but the jail doctor said he could not give him that medication unless the plaintiff had an outbreak. The plaintiff states that for several months he feared he would have an outbreak. Given the plaintiff's statement to the doctor that he was previously prescribed Valtrex *after an outbreak*, however, it would appear that Valtrex is prescribed for a herpes outbreak. The plaintiff does not allege

that he was in pain or that he was suffering from any symptoms in January 2020. His allegation that he was not prescribed Valtrex in January does not state a claim for inadequate medical care because there is no indication that the doctor's decision to not prescribe Valtrex was objectively unreasonable.

The remaining events took place after the plaintiff's February 12, 2020 criminal conviction, so the court considers them under the Eighth Amendment. To state a claim for deliberate indifference to a serious medical need under the Eighth Amendment, the plaintiff must allege that he suffered from a medical condition that was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." Greeno v. Daley, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Hayes v. Snyder, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)); see also Foelker v. Outagamie Cty., 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

The plaintiff alleges that symptoms from his May 2020 herpes outbreak included pain and open blister wounds on the side of his penis with a crusty, scab-like outer layer. At this early screening stage, the court concludes that these symptoms constitute an objectively serious condition that required medical attention and that the plaintiff has satisfied the first component of an Eighth Amendment deliberate indifference claim. See Myrick v. Anglin, 496 F. App'x 670, 674-75 (7th Cir. 2012) (plaintiff's allegation that untreated herpes and hernia were painful and had been recognized by medical staff as requiring treatment were objectively serious).

But a plaintiff also must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "To determine if a prison official acted with deliberate indifference, [courts] look into his or her subjective state of mind." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996)). "[S]howing negligence is not enough." Id. (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim." Id. (citing Farmer, 511 U.S. at 836-38). A difference in medical opinion between an inmate and prison medical staff does not support a claim of cruel and unusual punishment. See Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010); Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003). But a prisoner need not show that he was literally ignored to prevail on an Eighth Amendment claim. Sherrod v. Lingle, 223 F.3d 605, 611 (7th Cir.

9

2000); Greeno, 414 F.3d at 653. Nor may prison healthcare staff persist with treatment they know to be ineffective when reasonable alternatives are available. See Berry, 604 F.3d at 441-42.

The plaintiff alleges that had a herpes outbreak at the end of May 2020. He says that when his symptoms did not go away, he asked to be seen by the health services unit and that a couple of days later a nurse examined him. The plaintiff allegedly asked the nurse for Valtex and she said that she would ask the doctor, but the doctor prescribed him Hydrocortisone instead of Valtrex. The plaintiff refused the Hydrocortisone and filed a grievance. Before anyone responded to his grievance, he was transferred from the county jail to the Dodge Correctional institution where he received Valtrex.

The plaintiff's refusal of the Hydrocortisone medication forecloses any claim he might have had against the doctor. If the plaintiff had tried the Hydrocortisone medication and found it ineffective, and if the doctor then had persisted in that ineffective treatment, the plaintiff might have stated a claim against the doctor. But a difference in medical opinion between an inmate and prison medical staff does not support a claim of cruel and unusual punishment. See Berry, 604 F.3d at 441.

The plaintiff does has not stated a plausible claim for relief under §1983—not against the doctor and not against the medical staff.

### III. Conclusion

The court **GRANTS** the plaintiff's motion to proceed without prepaying the filing fee. Dkt. No. 2.

10

The court **DENIES AS MOOT** the plaintiff's letter motion to appoint counsel. Dkt. No. 10.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

The clerk's office will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined and the court will email a copy to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of

judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 7th_ day of December, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**

12

Case 2:20-cv-01222-PP   Filed 12/07/20   Page 12 of 12   Document 11